Katherine Helen ARNOLD, Theresa Case, Daniel Gohl, Carey Hattic, Kathleen Kern, Justin McCoy, Marc Salomon, Kelly Severin, Susan Svatek, Denise Szymczak, Appellants,

v.

The STATE of Texas, Appellee.

Nos. 1559–89 through 1568–89.

Court of Criminal Appeals of Texas, En Banc.

April 7, 1993.

Rehearing Denied May 19, 1993.

Rehearing Denied May 26, 1993.

Terrence W. Kirk, Austin, for appellants.

Ken Oden, County Atty. and Giselle Horton, Asst. County Atty., Austin, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANTS' PETITIONS FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

Appellants were convicted by a jury of the misdemeanor offense of disruptive activity on a university campus. V.T.C.A., Education Code, Section 4.30(a), (b)(2)

(1972). The trial court assessed a fine of $200.00 for each appellant and imprisonment of three months for seven appellants and five months for three appellants. The Austin Court of Appeals affirmed the convictions for all appellants. *Arnold v. State,* 778 S.W.2d 172 (Tex.App.—Austin 1989).[1] This Court granted appellants' petitions for discretionary review to determine whether the Court of Appeals erred in holding that (1) a county court-at-law judge has no duty to refer a motion to recuse to the presiding judge of the area; (2) appellants waived a constitutional challenge of vagueness and overbreadth to Section 4.30 of the Texas Education Code; and (3) evidence concerning the issue of "willfulness" was properly excluded.

■ The first ground for review involves whether the Court of Appeals erred in holding that the civil rule of procedure setting forth the procedures for recusal of judges does not apply in criminal cases. *Arnold,* 778 S.W.2d at 179; see Tex.R.Civ.P. 18a (formerly codified in Tex.Civ.Stat.Ann., Art. 200a, § 6). In *McClenan v. State,* 661 S.W.2d 108, 110 (Tex.Cr.App.1983), we held Article 200a, Section 6, V.A.C.S.,[2] applies to criminal cases. In *DeBlanc v. State,* 799 S.W.2d 701, 705 (Tex.Cr.App.1990), cert. denied, —— U.S. ——, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991), we implicitly held Tex. R.Civ.P. 18a applies to criminal cases. What was implicit in *DeBlanc,* we make explicit here and hold Tex.R.Civ.P. 18a applies to criminal cases absent "any explicit or implicit legislative intent indicating otherwise." See *McClenan,* 661 S.W.2d at 110.

■ Here, however, appellants' recusal motions failed to comply with the ten-day notice provision of Rule 18a. *Arnold,* 778 S.W.2d at 179–80. The Court of Appeals, in effect, also held even if Rule 18a applied,

---

1. In a companion case, appellant Chester Lewis Wilson was tried separately from the appellants but sentenced contemporaneously with them (fined $200.00 and sentenced to six months' incarceration). His conviction was affirmed by the Court of Appeals in a published opinion, *Wilson v. State,* 777 S.W.2d 823 (Tex.App.—Austin 1989). This Court granted Wilson's petition for discretionary review to assess a constitutional challenge alleging vagueness and overbreadth of Section 4.30 of the Texas Education Code. We today affirm Wilson's conviction for the reasons set forth herein. *Wilson v. State,* 853 S.W.2d 547 (Tex.Cr.App., this day delivered).

2. Now codified in Tex.R.Civ.P. 18a.

appellants' failure to comply with this ten-day notice provision waived their appellate complaint of the denial of an opportunity to have their motions heard by a judge other than the one assigned to the case. *Id.* at 179–80. We agree. See *DeBlanc,* 799 S.W.2d at 705. The first ground for review is overruled.

Appellants' second ground for review states the Court of Appeals erred in refusing to consider whether Section 4.30 of the Texas Education Code is unconstitutionally vague and overbroad. Section 4.30(a), in relevant part, prohibits "disruptive activity" on a university campus. Section 4.30(b)(1) to (5) describes various ways a person can engage in "disruptive activity." Here, we are concerned with Section 4.30(b)(2).[3] The complaints alleged that appellants:

> ".... intentionally and knowingly and willfully engage[d] in disruptive activity on the campus and property of an institution of higher education, namely, The University of Texas at Austin, by then and there seizing control of a portion of a building for the purpose of interfering with administrative and educational and other authorized activity."

Texas Education Code Annotated, Section 4.30(a), (b)(2).

In their brief to the Court of Appeals, appellants made a facial challenge to the overbreadth and vagueness of the statute on constitutional free speech grounds. See, e.g., *Morehead v. State,* 807 S.W.2d 577 (Tex.Cr.App.1991); *Smith v. State,* 772 S.W.2d 946 (Tex.App.—Dallas 1989, pet. ref'd). We set out the entire portion of their brief raising their constitutional claims:

> "Tex.Educ.Code § 4.30 (hereinafter § 4.30) is void for overbreadth in that 'it offends the constitutional principle that a "governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protect-

ed freedoms." ' *Zwickler v. Koota,* 389 U.S. 241, 249 [88 S.Ct. 391, 396, 19 L.Ed.2d 444] (1967). Because of § 4.30's abnormally broad sweep, much of the conduct that occurs within a university setting, and which deserves the protection of the state and federal constitutions, contravenes its literal provisions.
> "Section 4.30 is unconstitutionally vague. *Grayed [Grayned] v. City of Rockford,* 408 U.S. 104, [92 S.Ct. 2294, 33 L.Ed.2d 222] (1972).
> "Section 4.30 violates Article I, Section 8 of the Texas Constitution.
> "Appellants' Motion to Quash the information for unconstitutional overbreadth of Tex.Educ.Code § 4.30 should have been granted. The statute is unconstitutionally vague and overly broad and should be declared unconstitutional.
> "Because § 4.30 is vague and overly broad, the trial court erred in overruling Appellants' motion to quash. (Citations to record omitted)."

The Court of Appeals held appellants waived their constitutional challenges in the trial court because they only generally apprised the trial court of the nature of their claims. *Arnold,* 778 S.W.2d at 175–76.

Even if the Court of Appeals erred in holding appellants waived their constitutional challenges in the trial court, appellants still would not be entitled to relief. The facts, as set out in the Court of Appeals opinion, show appellants took over the office of the president of the University of Texas at Austin, barricaded the doorways, and disconnected the telephones and computers. *Arnold,* 778 S.W.2d at 174.

In considering an overbreadth claim, we first must decide whether the statute, in addition to proscribing activity which constitutionally may be forbidden, sweeps within its coverage a substantial amount of expressive activity which is protected by free speech guarantees. See *Morehead,* 807 S.W.2d at 580. Here, the statute regulates only conduct, not speech

---

**3.** Under Section 4.30(b)(2), a person commits "disruptive activity" where, with the required culpable mental state, he seizes control of any building or portion of a building for the purpose of interfering with any administrative, educational, research, or other authorized activity.

or any other expressive activity that implicates free speech guarantees. See *Bynum v. State*, 767 S.W.2d 769, 772 (Tex.Cr.App. 1989); *Guerrero v. State*, 820 S.W.2d 378, 382 (Tex.App.—Corpus Christi 1991, pet. ref'd); compare *Olvera v. State*, 806 S.W.2d 546, 552–53 (Tex.Cr.App.1991) (picketing claims an historic place in American society and involves expressive activity falling under free speech guarantees); *Morehead*, 807 S.W.2d at 579–81 (statute prohibited conduct and speech that disrupted a public meeting); *Smith*, 772 S.W.2d at 946 (statute prohibited obstructing a public entrance to a public business). We are aware of no authority, and appellants cited none in their brief in the Court of Appeals, that actually seizing control of a building on a college campus for the purpose of interfering with the legitimate activities there implicates constitutionally protected expressive activity. See Tex.R.App.Pro. 74(f). In addition, appellants set out no constitutionally protected conduct that is swept within the statute's coverage. We reject appellants' overbreadth challenge.

■ When a statute undergoes a vagueness challenge where no First Amendment rights are involved, as here, we need only scrutinize the statute to determine whether it is impermissibly vague as applied to the appellants' specific conduct; that is, having decided the statute regulates conduct not involving any historic or traditional constitutionally protected expressive activity, we decide only whether the statute is impermissibly vague as applied to appellants' specific conduct. *Guerrero*, 820 S.W.2d at 384; see also *Bynum*, 767 S.W.2d at 773–74; *Smith*, 772 S.W.2d at 950. Here, the statute gives a person of average intelligence fair notice that his contemplated conduct is forbidden, it creates little or no risk of arbitrary enforcement, and it clearly proscribes the above-described conduct of appellants. See *Bynum*, 767 S.W.2d at 774–75; *Guerrero*, 820 S.W.2d at 383–84; *Smith*, 772 S.W.2d at 950. Therefore, we reject appellants' vagueness challenge, and overrule their second ground for review.

■ The third ground for review involves whether the trial court properly excluded appellants' evidence on "willfulness." The complaints, in relevant part, alleged appellants "willfully" engaged in the prohibited conduct. At trial, each appellant specifically testified that he or she did in fact engage in the alleged conduct as a protest of the University's investments in corporations doing business in the Republic of South Africa and in protest of the University's Board of Regents refusing agenda time to groups urging divestment. Each appellant was permitted to testify at length about his or her belief that this disruptive activity of "sitting-in" would be authorized by international law as necessary to end apartheid, the official policy of racial segregation in South Africa, which international law has labeled a "crime against humanity."

The trial court refused to admit testimony from seven witnesses who were not present at the scene of the sit-in. The excluded testimony would have described various events involving apartheid that had occurred on the University of Texas campus, and the relationship of these events to state, national, and international events that transpired before this sit-in. The testimony was also offered to give the jury "greater insight" into each appellants' mental state immediately prior to and at the time of the incident in question. Appellants claimed the evidence was relevant to the issue of "willfulness," the statutory mental culpability for the alleged offense.

The trial court instructed the jury on the mental states charged in the indictment, "intentionally, knowingly, and willfully." The court specifically charged:

"A person acts 'willfully' when his action is voluntary, as distinguished from accidental, and when it is done with a bad purpose, or without justifiable excuse, or without grounds for believing it is lawful, or with a careless disregard for whether or not one has the right so to act."

On appeal, appellants complained that the excluded evidence should have been admitted because it was relevant to whether they

"willfully" committed the alleged disruption. The Court of Appeals held that "these witnesses could not have testified as to each appellant's state of mind—each appellant's testimony was necessary for that." *Arnold v. State,* 778 S.W.2d at 175.

We agree with the Court of Appeals. Ray's Texas Law of Evidence, Section 1428, states:

"In general our courts permit a witness to testify as to his own intention or other state of mind where the same is material. * * * On the other hand decisions purporting to apply the opinion rule, uniformly exclude the testimony of a witness as to another person's state of mind. It is said that since one person cannot possibly know another's state of mind, his testimony is necessarily based on conjecture. This argument really invokes the rule requiring the witness to have personal knowledge of the matter about which he is to testify."

See *Winegarner v. State,* 505 S.W.2d 303 (Tex.Cr.App.1974) (psychiatrist could not give his opinion based on hearsay as to appellant's intent at the time of the offense); *Jackson v. State,* 548 S.W.2d 685 (Tex.Cr.App.1977) (court properly refused to permit psychiatrist to testify regarding appellant's state of mind at the time of alleged offense); *Whitmire v. State,* 789 S.W.2d 366 (Tex.App.—Beaumont 1990) (court correctly refused to permit physician to testify regarding appellant's state of mind as it existed before or after the shooting); compare *Hernandez v. State,* 772 S.W.2d 274 (Tex.App.—Corpus Christi 1989) (testimony of pathologist that knife wound was intentional rather than accidental was admitted despite appellant's contention that this was state of mind testimony like that in Winegarner). We overrule the third ground of review.

Accordingly, the judgments of the Court of Appeals and trial court are affirmed.

OVERSTREET, J., concurs.

CLINTON, J., dissents.